## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF MICHIGAN

**BRADLEY BROCK,**

    Plaintiff,

v

Case No. 2:22-CV-10500
Hon.

**CHIEF OF POLICE WILLIAM T. RILEY III,**
**OFFICER JOHN DOE and**
**THE CITY OF INKSTER,**

    Defendants.

---

Joseph M. Xuereb (P40124)
Natalie I. Schultz (P81063)
XUEREB LAW GROUP PC
Attorneys for Plaintiff
7752 N. Canton Center Rd., Ste. 110
Canton, MI 48187
(734) 455-2000
(734) 455-2013 (fax)
jxuereb@xuereblawgroup.com

---

### **COMPLAINT AND JURY DEMAND**

There is no other pending or resolved civil action
arising out of the same transaction or occurrence
alleged in the complaint.

Joseph M. Xuereb (P40124) Attorney for Plaintiff

Plaintiff, BRADLEY BROCK, through his attorneys, XUEREB LAW GROUP PC, by

Joseph M Xuereb, for his complaint against the defendants, Inkster Police Officer, John Doe

("Officer Doe"), Chief of Police William T. Riley II ("Chief Riley"), and the City of Inkster

("Inkster"), states:

1.      This a civil action arising under common law avenues and 42 U.S.C. § 1983 and 1988

seeking  compensatory  damages,  punitive  damages,  and  attorney  fees  stemming  from

Defendants' violations of Plaintiff's rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States.

## JURISDICTION AND VENUE

2.     Plaintiff restates the allegations contained in paragraph 1, above.

3.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1367(a), and § 1341.

4.     Venue is proper under 29 U.S.C. § 1391(b).

5.      The incident giving rise to this action occurred in the City of Inkster, County of Wayne, State of Michigan.

6.     At all times relevant, Defendant Officer Doe is a City of Inkster Police Officer who acted under color of state law and is a "person" for purposes of a 42 U.S.C. § 1983 action.

7.     Moreover, Defendant Officer Doe acted under color of laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan.

## PARTIES

8.     Plaintiff restates the allegations contained in paragraphs 1 through 7, above.

9.     Plaintiff, Bradley Brock, is and has been during all relevant times a resident of the County of Wayne, State of Michigan, and was the owner of a 3-year-old Mastiff dog called Moose. Plaintiff and Moose resided in Inkster, Michigan at the time the dog was shot and killed.

10.     Defendant Officer Doe was a duly appointed and sworn as a police officer working for the Inkster Police Department. Defendant Officer Doe is a named defendant in his individual capacity.

11.     Defendant Chief of Police William T. Riley III ("Chief Riley") was at all times relevant to this complaint duly appointed and sworn as the Inkster Police Department's Chief of Police. He is a named defendant in his individual capacity.

12.     Defendant City of Inkster is a governmental entity and municipality incorporated under the laws of Michigan for purposes of liability under 42 U.S.C. § 1983.

13.     Defendant City of Inkster operates, manages, and controls the Inkster Police Department ("IPD") and enforces local and state law through the IPD.

14.     Defendant Chief Riley was employed by the Defendant City of Inkster and was responsible for the oversight, supervision, discipline, and training of IPD personnel, including Defendant Officer Doe.

15.     Defendant City of Inkster employed and was responsible for oversight, supervision, discipline, and training of IPD personnel, including Defendant Officer Doe and Defendant Chief Riley.

16.     Defendant City of Inkster is the body responsible for IPD's official policies and practices as well as IPD's unofficial customs and practices with respect to use of force, de-escalation, and IPD's interactions with dogs belonging to members of the community.

17.     All the events described in this complaint occurred in the City of Inkster and the State of Michigan.

## **FACTUAL ALLEGATIONS**

18.     Plaintiff restates the allegations contained in paragraphs 1 through 17, above.

19.     At the time of the incident described in this complaint, plaintiff owned an approximately 3-year-old Mastiff male dog named Moose. **Exhibit 1**, Moose.

20.     Moose was a sweet, loving, playful dog. He was beloved by his family and was a good boy.

21.     Moose had no history of biting or otherwise being dangerous to humans or animals. He was known to be affectionate and friendly with both people and other dogs and cats.

22.     Moose was plaintiff's life and support animal helping plaintiff to cope with the lost of his leg.

23.     At all relevant times herein, Moose had a dog collar and tag around his neck.

24.     On November 15, 2021, plaintiff called 911 to report an individual pulling a gun on him at a Marathon Gas Station on Michigan Avenue in Inkster, Michigan

25.     Plaintiff told dispatch to have the police officer meet him at The Flower Bowl on Michigan Avenue in Inkster, Michigan.

26.     Only one police officer was dispatched to respond to plaintiff's 911 call and to take his report of the incident. Defendant Officer Doe arrived at The Flower Bowl and observed plaintiff's dog. Plaintiff informed the officer that Moose was his dog and was friendly.

27.     Plaintiff told Moose to sit and stay approximately 6 yards away from where Defendant Officer Doe and plaintiff were talking.

28.     Moose, off leashed, sat and stayed there quietly while Defendant Officer Doe took plaintiff's report while standing in the street.

29.     As plaintiff and Defendant Officer Doe were talking, a civilian walked past the police officer's vehicle and behind Defendant Officer Doe, and then past plaintiff.

30.     Moose became curious and left where he was sitting to sniff the civilian that was walking past his owner.

31.     Moose quietly approached and sniffed the civilian and exhibited a happy and playful demeanor.

32.     Moose was wagging his tail the entire time.

33.     Defendant Officer Doe was on looking at the interaction between the civilian and Moose, and observed the unaggressive, playful interaction between Moose and the civilian.

34.     Next, Moose walked up to plaintiff.

35.     Moose was wagging his tail and exhibited the same playful, happy demeanor as just displayed with the civilian that passed by.

36.     Moose never growled, barked, lunged, showing his teeth, or showed any signs of aggression towards any persons, including Defendant Officer Doe.

37.     Moose's approach to Defendant Officer Doe was what you might expect from a friendly dog looking to greet someone new.

38.     As soon as Moose is right behind plaintiff, who is approximately 6 feet away from Defendant Office Doe, Defendant Officer Doe quickly pulled his gun out of the holster and pointed the gun at both plaintiff and Moose. **Exhibit 2**, Still shot of officer shooting Moose.

39.     Within seconds of Moose taking his first step towards the police officer, Defendant Officer Doe opened fired at Moose right in front of plaintiff.

40.     Plaintiff repeatedly screamed at Defendant Officer Doe, "Please Stop! Please Stop! He is Friendly!"

41.     Despite plaintiff begging the office to stop shooting at his dog, Moose, the Defendant Officer Doe did not care and continued open firing on Moose while Moose was walking towards him and was wagging his tail.

42.     Even after Moose was shot, limping, and was bleeding out, the dog was still wagging his tail.

43.     Plaintiff was screaming and crying in horror. Moose was plaintiff's best friend and was dying in front of his eyes. Moose was suffering but was still wagging his tail.

44.     Other police officers arrived on the scene as plaintiff was lying on the ground comforting Moose and was begging to rush him to the vet.

45.     Defendant Officer Doe did not care, and never provided care to Moose's wounds.

46.     Moose displayed no signs of aggression

47.     Moose put no one in imminent danger.

48.     It took approximately 45 minutes before the police officers allowed plaintiff to get his vehicle to take Moose to a nearby emergency vet clinic.

49.     The police officers, including Defendant Officer Doe, let Moose bleed out for 45 minutes without giving any basic medical aid or attention to Moose's wounds.

50.     For approximately 45 minutes, plaintiff laid on the ground comforting his lethally wounded dog and begging his best friend to hang in there.

51.     Moose was taken to a veterinary emergency service in Allen Park, Michigan.

52.     When arriving at the vet, the medial report stated that Moose's "[c]oat saturated in blood. Profusely bleeding from the two puncture wounds on neck. Puncture wound on dorsal neck. Puncture wound on right ear. Open wound on lateral thorax, open wound on ventral sternum. Open wound on right lymph nodes…Metal opacity consistent with bullet within check region. Fractured right elbow with bullet lodged in elbow." **Exhibit 3** – Medical Report.

53.     Moose later died that evening from his injuries.

**COUNT I**
**UNLAWFUL SEIZURE VIOLATION OF CIVIL**
**RIGHTS 42 U.S.C. § 1983 AND FOURTH AMENDMENT AGAINST**
**THE DEFENDANT OFFICER JOHN DOE AND DEFENDANT CHIEF RILEY**
**FOR COMPENSATORY DAMAGES, PUNITIVE DAMAGES AND ATTORNEY'S FEES**

54.     Plaintiff restates the allegations contained in paragraphs 1 through 53, above.

55.     The Fourth Amendment of the Unites States Constitution, U.S. Const. amend. IV, prohibits the government from unreasonably destroying or seizing a citizen's property.

56.     "The destruction of property by state officials poses as much of a threat, if not more, to people's right to be 'secure…in their effects' as does the physical taking of them." *Fuller v. Vines*, 36, F.3d 65, 68 (9th Cir. 1994).

57.     Shooting a "dog is a destruction recognized as a seizure under the Fourth Amendment and can constitute a cognizable claim under § 1983." *Id.*

58.     Citizens have a Fourth Amendment property right in their pets under the United States Constitution. *San Jose Charter of the Hell's Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 977-78 (9th Cir. 2005); *Brown v. Battle Creek Police Department*, 844 F.3d 556, 568 (6th Cir. 2016).

59.     Additionally, the Sixth Circuit has determined that an individual has a property right in their pets. *Brown*, 844 F.3d at 567.

60.     Dogs are more than just a personal effect. *San Jose*, 402 F.3d at 975 (holding that defendant police's shooting of plaintiff's dogs was an unreasonable seizure.).

61.     The emotional attachment to a family's dog is not comparable to a possessory interest in furniture. *Brown*, 844 F.3d at 565, quoting *San Jose*, 402 F.3d at 975.

62.     Indeed, plaintiff's Fourth Amendment interests involved are substantial because "the bond between a dog owner and his pet can be strong and enduring," and plaintiff thinks

of Moose "in terms of an emotional relationship, rather than a property relationship." *Altman v. City of High Point, N.C.*, 330 F.3d 194, 205 (4th Cir. 2003).

63.     The Sixth Circuit has determined that "the use of deadly force against a household pet is reasonable ***only if*** the pet poses an [imminent] danger and the use of force is unavoidable." *Brown*, 844 F.3d at 565 (emphasis added) (quoting *Villo v. Eyre*, 547 F.3d 707, 710 (7th Cir. 2008) (holding that the unreasonable killing of a companion dog constitutes a seizure under the Fourth Amendment).

64.     In circumstances where, as here, the dog did not pose an imminent threat, and therefore, the shooting of the dog was an unreasonable seizure.

65.     Defendant Officer Doe's actions described herein were intentional, grossly negligent, amounted to reckless or callous indifference to plaintiff's constitutional rights.

66.     Defendant Officer Doe's seizure of plaintiff's dog, Moose, was objectively unreasonable under the totality of the circumstances and therefore constituted an unreasonable seizure under the Fourth Amendment.

67.     Defendant Officer Doe's shooting of Moose was more intrusive than necessary. *Florida v. Royer*, 460 U.S. 491, 504 (1983) ("A seizure becomes unlawful when it is 'more intrusive than necessary").

68.     No governmental interest justifies the intrusion involved in this case when Defendant Officer Doe tragically shot and killed Moose.

69.     It is clearly established that the unreasonable killing of a dog constitutes an unconstitutional seizure of personal property under the Fourth Amendment. Brown, 844 F.3d at 567.

70.     Defendant Officer Doe's shooting of plaintiff's dog, Moose, was an objectively unreasonable killing of Moose because Moose was not barking or making any threatening gestures, such as growling, showing his teeth, or lunging towards Defendant Officer Doe.

71.     In fact, Moose displayed a happy and playful demeanor towards Defendant Officer Doe. Moose was wagging his tail and wanted to greet Defendant Office Doe, a sign of a clearly unaggressive dog.

72.     As soon as Moose took a step-in front of plaintiff, Defendant Officer Doe quickly pulled out his gun and began open firing at Moose in front of plaintiff and in plaintiff's direction.

73.     Defendant Officer Doe continued shooting at Moose while plaintiff was screaming "Please stop! Please stop! He is friendly!"

74.     Defendant Officer Doe shoot Moose for no reason at all. Defendant Officer Doe was not in any imminent danger that would have justified the use of deadly force. *Fuller v. Vines*, 36 F.3d 65 (9th Cir. 1994).

75.     Moreover, plaintiff informed Defendant Officer Doe when arriving at the scene that Moose was his dog and was friendly.

76.     A police officer may not "destroy a pet when it poses no immediate danger and the owner is looking on, obviously desirous of retaining custody." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211 (3rd Cir. 2001).

77.     Under 42 U.S.C § 1983, plaintiff is entitled to an award of compensatory damages against Defendant Officer Doe in his individual capacity, which includes "damages for the emotional distress suffered by plaintiff…and any other injury that is the result of…the unlawful seizure of plaintiff's dog." *Moreno v. Hughes*, 157 F.Supp.3d 687, 692 (E.D. Mich. 2016).

78.     Defendant Officer Doe's actions were reckless, showed callous indifference toward the rights of plaintiff, and were taken in the face of a perceived risk that the actions violated federal law.

79.     Moreover, Defendant Chief Riley had a duty to train and supervise Defendant Officer John Doe.

80.     Defendant Chief Riley failed to reasonably train and supervise IPD officers, including Office John Doe, in specific issues related to encountering citizens' dogs in the field, despite the obvious need to do so.

81.     Defendant Chief Riley knew or should have known that their failure to adequately supervise and train IPD officers in such issues relating to encountering citizens' dogs in the field was likely to harm individuals such as plaintiff; it was reasonably foreseeable that their failures in these areas would cause the harm or a similar harm that plaintiff has suffered, is suffering, and will suffer.

82.     In failing to reasonably train and supervise IPD officers, including Defendant Officer Doe, in such issues relating to citizens' dogs, Defendant Chief Riley caused plaintiff to be subjected to the deprivation of his right to be secure in his person against unreasonable seizures as guaranteed by the Fourth Amendment to the U.S. Constitution.

83.     Defendant Chief Riley's actions and omissions violated plaintiff's federal constitutional rights and were a substantial and significant contributing cause and proximate cause of plaintiff's damages.

84.     Under 42 U.S.C. § 1983, plaintiff is entitled to an award of compensatory damages against Defendant Officer Doe and Defendant Chief Riley , in their individual capacity, in order to punish them and to deter others.

85.     Under 42 U.S.C. § 1988, plaintiff is the prevailing party in this litigation, then he will be entitled to receive an award of reasonable attorney's fees, non-taxable expenses, and costs.

## COUNT II
## UNLAWFUL SEIZURE VIOLATION OF CIVIL RIGHTS 42 U.S.C. § 1983 AND FOURTH AMENDMENT AGAINST THE DEFENDANT CITY OF INKSTER FOR COMPENSATORY DAMAGES, PUNITIVE DAMAGES AND ATTORNEY'S FEES

86.     Plaintiff restates the allegations contained in paragraphs 1 through 85, above.

87.     Defendant City of Inkster is liable for the acts and omissions of its agents and/or employees, and for the herein described acts by the individual defendants, who were acting within the scope and course of their employment.

88.     Defendant City of Inkster is a governmental entity and municipal incorporated under the laws of Michigan for purposes of liability under 42 U.S.C. § 1983 and the Inkster Police Department is a department of the City of Inkster. Defendant City of Inkster enforces local and state law through its law enforcement agency, the Inkster Police Department ("IPD").

89.     Defendant City of Inkster is responsible for the promulgation of policies, customs, practices, and training of IPD personnel, including Defendant Officer Doe and Defendant Chief Riley.

90.     Defendant City of Inkster employs and is responsible for the oversight, supervision, discipline, and training of IPD personnel, including Defendant Officer Doe and Defendant Chief Riley.

91.     Defendant City of Inkster is the body responsible for IPD's official policies and practices as well as IPD's unofficial customs and practices with respect to use of force, de-escalation, and IPD's interactions with dogs belonging to members of the community.

92.     Defendant City of Inkster's unconstitutional policies, practices, and customs, or lack thereof, were the driving force and proximate cause of the damages that plaintiff suffered.

93.     Therefore, Defendant City of Inkster utterly failed to properly hire, train, and supervise Defendant Officer Doe and Defendant Chief Riley with regard to the use of force, de-escalation, and interactions with dogs belonging to members of the community.

94.     Defendant City of Inkster exhibited deliberate indifference to the rights of others when it failed to properly hire, train, and supervise Defendant Officer Doe with regard to the use of force, de-escalation, and interactions with dogs belonging to members of the community.

95.     Defendant City of Inkster's failures showed a deliberate choice by Defendant City of Inkster when it had other alternatives to choose from that would have protected the rights of others. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

96.     Defendant City of Inkster directly and proximately caused the death of plaintiff's dog, Moose, because it failed to adequately and property hire, train, and supervise Defendant Officer Doe with respect to his control, or lack thereof, of its use of force, de-escalation, and interactions with dogs belonging to members of the community.

97.     The importance of proper training, hiring, and supervision is so necessary and important for the safety of the public and other dogs that willful disregard for such proper training, hiring, and supervision can reasonably be determined to have been deliberately indifferent to such a vital need.

98.     But for Defendant City of Inkster's failure to properly hire, train, and supervise Defendant Officer Doe, the damages to plaintiff and the constitutional violations of Defendant Officer Doe would not have occurred.

99.     Under 42 U.S.C. § 1983, plaintiff is entitled to an award of compensatory damages against Defendant City of Inkster.

100.    Under 42 U.S.C. § 1988, plaintiff is the prevailing party in this litigation, then he will be entitled to receive an award of reasonable attorney's fees, non-taxable expenses, and costs.

## COUNT III
## COMMON LAW AND/OR STATUTORY CONVERSION—CHATTELS

101.    Plaintiff restates the allegations contained in paragraphs 1 through 100, above.

102.    Conversion is "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." Foremost Ins. Co. v. Allstate Ins. Co., 439 Mich. 378, 486 (1992).

103.    On November 15, 2021, Defendant Office Doe had unlawfully taken and asserted exclusive dominion and control over plaintiff's dog, Moose, when he shot and killed the dog.

104.    That by needlessly and wrongfully shooting and killing plaintiff's dog, Defendant Officer Doe's actions were a distinct act of dominion wrongfully exerted over plaintiff's dog in denial of or inconsistent with his rights.

105.    The acts described above constitute an unlawful conversion of plaintiff's property, resulting in damages of plaintiff's possessory rights of his dog.

106.    Defendant's acts set forth above constitute statutory conversion under MCL 600.2919a.

107.    Defendant's acts set forth above constitute the wrongful and unlawful exertion of dominion and control by Defendant Office Doe over plaintiff's interest in the dog, inconsistent with the possessory rights of plaintiff's property, under the common law of the State of Michigan.

108.   MCL 600.2919a provides the following:

    (1) A person damages as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

        (a) Another person's stealing or embezzling property or converting property to the other person's own use.

109.   Pursuant to MCL 600.2919a(1)(a), plaintiff is entitled to costs and actual attorney fees wrongfully sustained in bringing this action.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

110.   Plaintiff restates the allegations contained in paragraphs 1 through 109, above.

111.   Defendant Officer Doe's shooting and killing plaintiff's dog, Moose, Defendant Officer Doe exhibited extreme and outrageous conduct.

112.   Defendant Officer Doe intentionally and/or recklessly shot Plaintiff's dog, Moose.

113.   Defendant's actions caused plaintiff severe emotional distress, so severe that no reasonable person could be expected to endure it, including without limitation, sever horror, grief, and anger over the shooting of Moose, nausea, inability to eat, loss of sleep, inability to concentrate among others. *Haverbush v. Powelson*, 217 Mich. App. 228, 234-35 (1996).

114.   Defendant Officer Doe's conduct was so outrageous in character, and so extreme in degree, that it went beyond all possible bounds of decency.

115.   Defendant Officer Doe's shooting and killing of plaintiff's dog, Moose, Defendant Officer Doe's actions are regarded as atrocious and utterly intolerable in a civilized community.

## COUNT V
## GROSS NEGLIGENCE

116.   Plaintiff restates the allegations contained in paragraphs 1 through 115, above.

117.    Gross negligence means "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a).

118.    At all relevant times, Defendant Officer Doe was employed as a police officer by Defendant City of Inkster and owed a duty to plaintiff to act with ordinary care and to act as would a reasonably prudent police officer under the same or similar circumstances.

119.    At all relevant times, Defendant Officer Doe further owed a duty to plaintiff and to all others similarly situated, to exercise due care and caution in the discharge of his police duties, to follow the policies and procedures established by Defendant City of Inkster for the safe use and operation of Defendant Officer Doe's weapon.

120.    On November 15, 2021, Defendant Officer Doe was engaging in the exercise or discharge of a governmental function on behalf of the Inkster Police Department by responding to plaintiff's 911 call.

121.    Contrary to such duties, Defendant Officer Doe breached the above duties and all other applicable duties and thereby was grossly negligent, reckless, and/or guilty of willful and wanton misconduct. Defendant Officer Doe's actions were reckless and demonstrated a substantial lack of concern as to whether injury or death resulted, thereby subjecting Defendant Officer Doe to liability under Michigan statutes.

122.    Defendant Officer Doe's wrongful conduct includes but is not limited to the following:

   a.   Improper use of unreasonable, unnecessary and deadly force when neither plaintiff or plaintiff's dog, Moose, posed no imminent threat of harm to any person, including Defendant Officer Doe;

   b.   Failure to property handle and/or maintain a police gun at all times to prevent it from discharging in the vicinity of innocent persons and civilians;

     c. Recklessly and intentionally shooting plaintiff's dog, Moose, when Moose did not pose an imminent threat to any person, including Defendant Officer Doe;

     d. Any and all additional acts of gross negligence and/or willful misconduct as may come to be known through the course of this lawsuit.

123.    Therefore, Defendant Officer's Doe conduct amounts to gross negligence and is the direct or proximate cause of plaintiff's injuries and damages.

## REQUEST FOR RELIEF

THEREFORE, plaintiff respectfully requests this Court enter judgment in their favor and against defendants, and award plaintiff all relief as allowed by law and equity, including but not limited to:

A. Actual economic damages as established at trial;

B. Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, trauma, fear, anxiety, loss of enjoyment of life, loss of liberty, loss of sense of security, and other non-pecuniary losses;

C. Punitive and exemplary damages for all claims as allowed by law in an amount to be determined at trial;

D. Issuance of an Order mandating appropriate equitable relief, including but not limited to:

     i. Issuance of a formal apology from each defendant to plaintiff;

     ii. The imposition of appropriate policy changes designed to avoid future similar misconduct by defendants;

     iii. Mandatory training designed to avoid and prevent future similar misconduct by defendants;

     iv. Imposition of disciplinary action against appropriate employees of City of Inkster and Defendant Officer Doe;

E. A judgment in favor of plaintiff and against the defendants for costs, attorney's fees, and interests wrongfully sustained in having to bring this action pursuant to MCL 600.2919a(1)(a) and 42 U.S.C. § 1988;

F. Any other relief that justice requires.

## <u>VERIFICATION</u>

I DECLARE UNDER PENALTY OF PERJURY THAT THE STATEMENTS ABOVE ARE TRUE AND ACCURATE TO THE BEST OF MY INFORMATION, KNOWLEDGE AND BELIEF.

BRADLEY BROCK

Subscribed and sworn to before me
This third day of March, 2022

Joseph M. Xuereb, Notary Public
Wayne County, MI, acting in Wayne County, MI
My commission expires: 8-10-2025

Respectfully submitted,

**XUEREB LAW GROUP PC**

By:

Joseph M. Xuereb (P40124)
Natalie I. Schultz (P81063)
Attorneys for Plaintiff
7752 Canton Center Rd., Ste 110
Canton, MI 48187
(734) 455-2000

Date: March 3, 2022