## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BRADLEY BROCK,

        Plaintiff,

v.

MONTREAL CLARY,

        Defendant.

_____/

Case No. 22-10500

Honorable Jonathan J.C. Grey

## OPINION AND ORDER CONDITIONALLY GRANTING IN PART MOTION FOR REMITTITUR AND DENYING MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT (ECF No. 88)

This matter is before the Court on Defendant Montreal Clary's motions for remittitur and/or judgment notwithstanding the verdict (ECF No. 88). Plaintiff Bradley Brock filed a response to the motion for remittitur and no reply was filed. (ECF No. 95.) The Court finds that the parties have adequately briefed the motions and therefore considers them without oral argument. E.D. Mich. LR 7.1(f). For the following reasons, the motion for judgment notwithstanding the verdict (ECF No. 88) is **DENIED** and the motion for remittitur (ECF No. 88) is **CONDITIONALLY GRANTED IN PART**.

## I.   BACKGROUND

### A.   Facts

As established at trial, this case arose out of an incident that occurred on November 15, 2021, at the intersection of Michigan Avenue and Springhill in Inkster, Michigan. Inkster police officers were dispatched to a Marathon gas station located at 28474 Michigan Avenue in response to a 911 call made by Brock. In the call, Brock stated that an employee of the Marathon pulled a gun on him, and he would meet responding officers across the street near the Flower Bowl cannabis business.

Working in the vicinity, Officer Montreal Clary heard the news over police dispatch and traveled to the scene. When he arrived, Officer Clary parked his vehicle in at an angle, so that the rear of the vehicle was close to the road. A bystander's drone captured the entire subsequent interaction between Brock and Officer Clary on video, although there is no audio in the recording.

As shown on the video, Brock approached Officer Clary to lodge his complaint regarding the events that occurred at the gas station. Brock had lost a leg in a vehicle accident, and his service dog in-training, Moose,

2

accompanied him. Moose, a large mastiff, weighed approximately 99 pounds.

When Brock approached Officer Clary, Moose was unleashed. Brock told Moose at least twice to "stay." Brock testified that he informed Officer Clary that Moose was his service animal; but Officer Clary denied this when he testified.

Prior to interacting with Officer Clary, Moose approached a passing pedestrian while Brock stood nearby. Brock informed the individual that Moose was friendly, and the individual briefly paused to allow Moose to greet him before he continued walking. Officer Clary was present for the interaction with the pedestrian.

After the interaction with the pedestrian, Moose moved in the direction of Officer Clary. Officer Clary yelled at Brock to get control of Moose. Officer Clary testified that he felt threatened by the unleashed dog, which he perceived to be large and menacing. As a result, Officer Clary backed away from Moose, toward on-coming traffic in the eastbound lanes of US-12, a four-lane road. As Officer Clary reached the rear of his vehicle and Moose continued to approach, he shot Moose four

times. Moose was taken to a veterinarian's office and subsequently euthanized.

Brock testified that he paid approximately $800 to euthanize Moose. Brock and his family members testified that after Moose's death, Brock suffered an intense period of depression which lasted approximately a year.

### B.   Procedural History

On October 18, 2023, the Court granted in part defendants' motion for summary judgment and dismissed Brock's *Monell* claim and the claims against Defendant Riley and the City of Inkster ("Inkster"). (ECF No. 31.) On February 26, 2025, the Court began a three-day jury trial in this matter. After Brock finished presenting his case, Clary moved for a directed verdict. (ECF No. 72.) The Court denied the motion. (*Id.*) At the close of proofs, the Court denied Clary's renewed motion for a directed verdict and Brock's motion for a directed verdict. (ECF Nos. 74–75.) On February 28, 2025, following jury deliberations, the jury announced a verdict in favor of Brock on his Fourth Amendment unreasonable seizure claim. The jury awarded Brock $250,000.00 in compensatory damages

and $200,000.00 in punitive damages. On March 6, 2025, the Court entered a corresponding judgment. (ECF No. 82.)

## II.   DEFENDANTS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT (ECF No. 88)

The standard for judgment notwithstanding the verdict is whether there is sufficient evidence to raise a question of fact for the jury. *Riverview Invs., Inc. v. Ottawa Cmty. Imp. Corp.*, 899 F.2d 474, 482 (6th Cir. 1990) (citing *Morelock v. NCR Corp.,* 586 F.2d 1096, 1104 (6th Cir. 1978)). The Court must view all the evidence in the light most favorable to the nonmoving party and may not weigh the credibility of witnesses. *Id.* If the evidence is "so strongly in favor of the movant that reasonable minds could not come to a different conclusion, then the motion should be granted." *Morelock*, 586 F.2d at 1104.

Clary argues that judgment notwithstanding the verdict must be granted as he is entitled to qualified immunity, and a finding otherwise is against the manifest weight of the evidence. (ECF No. 88, PageID.1385.) He also argues that there was insufficient evidence of the requisite intent and that the Fourth Amendment is not implicated in the present case. (*Id.* at PageID.1387.) Brock responds that this Court previously resolved these arguments in his favor at summary judgment

5

and no error existed in the relevant jury instructions. (ECF No. 95, PageID.1451.)

First, as the Court explained in its summary judgment order, there is an established "constitutional right under the Fourth Amendment to not have one's dog unreasonably seized." *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 566 (6th Cir. 2016); *see also Viilo v. Eyre*, 547 F.3d 707, 709 (7th Cir. 2008) (collecting cases). To the extent Clary disputes that this is an established right, he cites no case law in support and his argument is largely undeveloped. The Court finds no reason to disturb its prior finding that there is a clearly established right not to have one's dog unreasonably seized. (*See* ECF No. 31, PageID.647.)

A seizure of a dog is reasonable if the dog posed an "imminent threat" to an officer. *Bullman v. City of Detroit,* 787 F. App'x 290, 299 (6th Cir. 2019). This was the central issue at trial, and the Court finds that Brock presented sufficient evidence such that the jury could reasonably find that Moose did not pose an imminent threat to Clary.

The evidence presented at trial was largely comparable to that considered at summary judgment, including the video which captured the events, before, during, and after the shooting. As the Court previously

6

stated, because "the video is taken from a birds-eye view rather than the view of Officer Clary, a jury would be in the best position to evaluate the evidence from his perspective, as well as the veracity of the witnesses." (ECF No. 31, PageID.649.)

At trial, this Court had the opportunity to observe the manner and demeanor of the witnesses who testified. Brock and Clary presented contradictory accounts of events before and during the shooting, specifically, whether Brock informed Clary that Moose was friendly and a service dog. Further, there was significant testimony regarding Moose's interaction with the passing pedestrian and Moose's demeanor generally. Based on the evidence presented, the jury could reasonably find that Moose did not pose an imminent danger to Clary.

Finally, Clary argues that Brock was required to prove that Clary intended to violate Brock's constitutional rights. This is a misstatement of the applicable case law. As outlined in *Fisher v. City of Memphis*, 234 F.3d 312, 317 (6th Cir. 2000), "the intent in question is the intent to commit the act, not the intent that a certain result be achieved." To prevail, Brock needed to establish that Clary intended to shoot Moose. Brock was not required to prove that Clary intended to violate Brock's

Fourth Amendment rights. And Clary stipulated to a jury instruction to this effect at trial, a fact which he notably omits from his briefs.

Additionally, Clary testified that he intended to discharge his weapon at Moose and there was no evidence presented that the shooting was unintentional. For that reason, the Court finds that there was sufficient evidence presented at trial such that a jury could find that Clary possessed the requisite intent. For the foregoing reasons, Clary's motion for judgment notwithstanding the verdict is **DENIED**.

## III. MOTION FOR REMITTITUR

In the alternative, Clary moves for a remittitur of damages under Federal Rule of Civil Procedure 59(e). (ECF No. 88, PageID.1365.) Clary's motion for remittitur is based on the following reasons: (1) lack of evidence to support the damages award, and (2) the jury award is excessive as it is not comparable to awards in similar cases. (ECF No. 88, PageID.1380.) Brock responds that the damages award was supported by sufficient evidence and the award is in line with awards in similar cases. (ECF No. 95, PageID.1456.)

"A remittitur should be granted only if the award clearly exceeds the amount which, under the evidence in the case, was the maximum

8

that the jury reasonably could find to be compensatory for the plaintiff's loss." *Babcock Power, Inc. v. Kapsalis*, 854 F. App'x 1, 5 (6th Cir. 2021) (internal citations omitted) (quoting *In re Lewis*, 845 F.2d 624, 635 (6th Cir. 1988)). An "award must stand unless it is (1) beyond the range supportable by proof; or (2) so excessive as to shock the conscience; or (3) the result of a mistake." *Gregory v. Shelby County*, 220 F.3d 433, 443 (6th Cir. 2000). For the reasons set forth below, the motion is **DENIED IN PART** as to the compensatory damages award and **GRANTED IN PART** as to the punitive damages award.

### A.    Compensatory Damages

The jury awarded Brock $250,000.00 in compensatory damages. Although the verdict form did not specify what percentage of this award constituted economic versus non-economic damages, this amount appears to be based largely on mental and emotional distress suffered by Brock as there was limited evidence presented as to economic damages. However, Clary cites no cases for the proposition that emotional distress damages were generally improper in this case.

Clary argues that compensatory damages in this case are improper as "damages based on the abstract 'value' or 'importance' of constitutional

rights are not a permissible element of compensatory damages." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 310, (1986); *see also Parrish v. Johnson*, 800 F.2d 600, 607 (6th Cir. 1986). However, he provides no support for the theory that the jury's award was based on the abstract importance of constitutional rights, as opposed to emotional distress suffered by Brock.

"[M]ental and emotional distress constitute compensable injury in § 1983 cases." *Memphis Cmty. Sch. Dist.,* 477 U.S. at 307 (citation omitted). Emotional-distress damages are inherently "subjective," but a jury may properly award such damages where a plaintiff shows "the nature and circumstances of the wrong and its effect." *Carey v. Piphus*, 435 U.S. 247, 264 & n.20 (1978).

Emotional distress need not be "severe," "outrageous," or "extreme" to warrant damages; so long as "any harm is shown," "damages proportionate to that harm should be awarded." *Chatman v. Slagle*, 107 F.3d 380, 384–85 (6th Cir. 1997). A jury's award of emotional-distress damages should not be disturbed unless the testimony regarding the plaintiff's emotional distress is "merely conclusory." *Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 611 (6th Cir. 2016). The Sixth Circuit

has held that testimony is "merely conclusory" when the only evidence of emotional harm was a statement by the plaintiff that he was "highly upset." *Erebia v. Chrysler Plastic Prods. Corp.*, 772 F.2d 1250, 1259 (6th Cir. 1985).

Moreover, a plaintiff may recover for mental and emotional distress without eliciting medical or expert testimony. *Ermold v. Davis*, 130 F.4th 553, 567 (6th Cir. 2025). In fact, an "injured person's testimony alone may suffice to establish damages for emotional distress provided that she reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements." *Bach v. First Union Nat. Bank*, 149 F. App'x 354, 362 (6th Cir. 2005).

The Court finds that there was sufficient evidence presented such that the jury could find that Brock suffered emotional damages. The evidence presented by Brock was more than "merely conclusory." For example, Brock elicited detailed testimony as to his close relationship with Moose from several witnesses. Brock wept and shook at many points during the trial and video evidence of the shooting and aftermath showed Brock's strong emotional reaction to Moose's injury. Brock's family members provided detailed testimony as to the emotional toll Moose's

death took on Brock. For that reason, the Court finds that emotional distress damages were generally proper in this case. The Court next turns to the specific amount of the damages.

Clary identifies three unpublished cases and argues that they demonstrate that the compensatory damages award is grossly excessive. First, Clary points to *Thomas v. Cannon*, 289 F. Supp. 3d 1182 (W.D. Wash. 2018), in which the jury awarded $10,000 in compensatory damages for the unreasonable seizure of a dog, and a total award of $8,635.00 in compensatory damages and $6,500.00 in punitive damages. As Clary notes, *Thomas* is distinguishable from the case at hand, because although it involved the unreasonable seizure of a dog, it centered around an excessive use of force which ultimately resulted in Thomas's death. For that reason, the Court finds it to be of limited utility in evaluating the damages in the case at hand.

Next, Clary cites *Erwin v. County of Manitowoc*, 872 F.2d 1292 (7th Cir. 1989) which the Court finds to be more analogous to this case. In *Erwin*, police officers entered a private home and shot and killed a dog. *Id.* at 1294. The arguments at trial were similar to those raised in the present case. For example, the officer who shot the dog claimed he acted

in self-defense and the plaintiffs presented evidence of the psychological damage caused by the killing of the dog. *Id.* A jury found the officer liable and awarded the plaintiffs awarded $600 in compensatory damages for the loss of their dog, $45,000 for the County's failure to train its officers, and a total of $40,000 in punitive damages. *Id.* After inflation, the compensatory damages award for the loss of the dog would be roughly $1,589 and the punitive damages award would be approximately $105,960 today.[1]

Finally, Clary turns to *Russell v. City of Chicago*, 10 C 525, 2011 WL 7178888 (N.D. Ill. Aug. 18, 2011) in which a jury awarded the plaintiffs a total of $330,000 in compensatory damages for the unreasonable seizure of their dog and $3,000 in punitive damages.

Brock in turn identifies *Brooks v. Jenkins*, 104 A.3d 899, 905 (Md. Ct. Spec. App., (2014), in which the jury awarded plaintiffs $20,000 in economic damages and $200,000 in noneconomic damages as the result

---

[1] The Court concludes that inflation is an appropriate factor to consider when determining whether a damages award is clearly excessive. *See Tullis v. Townley Eng'g & Mfg. Co.*, 243 F.3d 1058 (7th Cir. 2001) (when comparing to past awards, courts may take inflation into account); *Alla v. Verkay*, 979 F. Supp. 2d 349, 375 (E.D.N.Y. 2013). All inflation calculations were done using the Bureau of Labor Statistics' Consumer Price Index Inflation Calculator (https://data.bls.gov/cgi-bin/cpicalc.pl).

of the shooting of a dog. The jury further awarded plaintiffs $400,000 in noneconomic damages for the officer's entry into their home. *Id.* On appeal, the court upheld the $200,000 award for mental anguish damages, even though plaintiffs only provided evidence of $6,100 in veterinary care bills. *Id.* at 474–476.

The Court has also identified additional cases involving the shooting of dogs. In *Anderson v. Landrum*, No. 12 C 1902, 2015 WL 1538243, at *14 (N.D. Ill. Mar. 31, 2015) the court denied remittitur of a jury award of $230,000 in compensatory damages when a police officer shot and maimed a dog. In *Anderson*, the plaintiff "presented only $234.50 in veterinary bills, never sought psychological treatment as a result of his dog being shot, and he testified only cursorily and generally about his emotional suffering as a result of the incident." *Id.* Nevertheless, the court found that the award was not excessive as the plaintiff presented evidence that the event was traumatic, and he suffered psychological damage. *Id.*

Given the cases cited, the evidence presented, and the deference granted to damages awards rendered by juries, the Court finds that the compensatory damages award is not so excessive as to shock the

conscience of the Court. The $250,000 award is in line with the awards in cases cited, and Brock provided more than merely conclusory evidence of his emotional damages. For that reason, the Court **DENIES** the motion for remittitur as to the compensatory damages award.

## B.    Punitive Damages

In a § 1983 action, punitive damages are only permissible when "motivated by evil motive or intent, *__or__* when it involves *__reckless or callous indifference__* to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983) (emphasis added). In this case, contrary to Clary's assertion, the applicable standard was reckless or callous indifference.

### 1.    Sufficiency of the Evidence

The jury explicitly found that Clary acted with "a callous or reckless indifference to the risk of violating plaintiff's Fourth Amendment rights[.]" (ECF No. 78, PageID.1126.) Further, the parties stipulated to a jury instruction regarding punitive damages and the requisite level of intent. (*See* ECF No. 77, PageID.1119.) Clary does not allege that the punitive damages instruction was improper.

To the extent Clary argues that there was insufficient evidence presented on the intent element, the Court disagrees. Specifically, the Court considers the demeanor of the witnesses at trial, including Clary, and the evidence presented as to Moose's demeanor and uneventful interaction with the passing pedestrian. Additionally, Brock presented evidence that Clary acted quickly in shooting Moose when there was perhaps time for an alternative course of action.

Further, the Court notes that this argument is undeveloped, and Clary has not offered persuasive reasoning or reference to specific evidence from which the Court could make a contrary finding. For these reasons, and after a close review of the evidence, the Court finds that there was sufficient evidence presented to the jury such that they could reasonably find that Clary acted with reckless or callous indifference to Brock's Fourth Amendment right.

### 2.    Due Process Limits on Punitive Damages

While punitive damages may properly be imposed to further a State's legitimate interests in punishment and deterrence, the Due Process Clause of the Fourteenth Amendment prohibits "grossly excessive" punishment. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562

(1996). There are three guideposts for determining whether punitive damages comport with due process which include: (1) the degree of reprehensibility of the defendant's conduct, (2) the disparity between the harm or potential harm caused to the plaintiff and the punitive damage award; and (3) the differences between the punitive damages award and the civil penalties authorized or imposed in comparable cases. *Id.* at 574–575.

For example, in *Kidis v. Reid*, 976 F.3d 708, 717 (6th Cir. 2020) the Sixth Circuit applied the guideposts and found that remittitur was warranted in a case where the conduct was not highly reprehensible, and the award was out of line with comparable cases. *See also Wesley v. Campbell*, 864 F.3d 433, 445 (6th Cir. 2017), *Arnold v. Wilder*, 657 F.3d 353, 372 (6th Cir. 2011).

### 3. Reprehensibility

The Court first considers the degree of reprehensibility of the defendant's misconduct. The Court's analysis is colored by the fact that Clary provides no argument as to the first guidepost, while Brock generally suggests that a punitive damages award is necessary to deter similar behavior in the future. (ECF No. 95, PageID.1458.)

17

Reprehensibility is reviewed by considering whether: (1) the harm caused was physical as opposed to economic; (2) the tortious conduct evinced an indifference to or a reckless disregard of the health and safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident. *State Farm Mutual Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). In general, the Supreme Court has explained that "nonviolent crimes are less serious than crimes marked by violence or the threat of violence" and that "trickery and deceit are more reprehensible than negligence." *Gore*, 517 U.S. at 576 (citations and internal quotations omitted).

Some factors are inapplicable here, as this case involved an isolated incident and was not the result of trickery or deceit. Further, there is no indication that Brock had a financial vulnerability. These weigh against an award of punitive damages.

However, the jury found that Clary acted with callous or reckless indifference to Brock's rights, and there was sufficient evidence presented to support this finding. Finally, the Court finds that the

18

primary harm in this case was physical, rather than economic. This conclusion is based on the fact that Brock testified he had a significant emotional reaction, similar to that suffered by the plaintiff in *Romanski v. Detroit Ent., L.L.C.*, 428 F.3d 629 (6th Cir. 2005). In *Romanski*, the Sixth Circuit found that a plaintiff suffered "physical" harm when she felt "sick, embarrassed, humiliated, intimidated, and scared." *Id.* at 643–644. The court specified that "[a]lthough she did not suffer actual physical injury, the jury could reasonably infer from the peculiar circumstances of Romanski's detention and questioning—a process initiated on the casino floor in front of patrons by a team of four security personnel—that the threat of physical force was apparent." *Id.*

In this case, the threat of violence was readily apparent as a shooting occurred. Clary had his firearm drawn and pointed in Brock's general direction. Even though the violence in this case was inflicted on a dog, not a human being, it is still violence. Ultimately, the conduct in this case was sufficiently reprehensible to justify the punitive damages award granted in this case.

19

### 4.    Ratio of Compensatory to Punitive Damages

Clary likewise makes no argument as to the second guidepost: the ratio between actual and punitive damages. Brock asserts that this element weighs in his favor as the punitive damages award is less than that for compensatory damages. (ECF No. 95, PageID.1459.) On this point, the Court agrees with Brock. As the punitive damages awarded in this case are lower than the compensatory damages, the ratio here does not violate due process, and this guidepost weighs in favor of the punitive damages award. Finally, the Court looks to any penalties that punish similar behavior, including past awards in comparable cases. *Kidis v. Reid*, 976 F.3d 708, 717 (6th Cir. 2020). The question in this analysis is if Clary had fair notice that "conduct of the sort that occurred here might result in penalties, fines, or punitive damages on the order of" $200,000. *Romanski,* 428 F.3d at 649.

Consequently, the Court evaluates other punitive damage awards in dog shooting cases (the asterix (*) after each number indicates a 2025 inflation-adjusted dollar value):

- *Thomas v. Cannon*, 289 F. Supp. 3d 1182 (W.D. Wash. 2018): $10,000 in compensatory damages for the unreasonable seizure of a dog; total award of $8,635,000 in compensatory damages and $6,500,000 in punitive damages.

- *Erwin v. Cty. of Manitowoc*, 872 F.2d 1292 (7th Cir. 1989): $600 in compensatory damages for unreasonable seizure of dog; $45,000 in compensatory damages for the county's failure to train its officers; $40,000/105,960* in punitive damages.

- *Russell v. City of Chicago*, 10 C 525, 2011 WL 7178888 (N.D. Ill. Aug. 18, 2011): $330,000 in compensatory damages and $3,000/4,370* in punitive damages.

Of the similar cases that have reached a jury, only *Thomas* had a higher punitive damages award and as previously discussed, *Thomas* is distinguishable from the current case.

The Supreme Court has also occasionally looked to criminal penalties that may be imposed. *State Farm*, 538 U.S. at 428. However, the Court has cautioned that "[w]hen used to determine the dollar amount of the award, however, the criminal penalty has less utility" and "care must be taken to avoid use of the civil process to assess criminal penalties[.]" *Id*.

The Court looks to Mich. Comp. Laws § 750.50b, killing or torturing an animal in the first degree, which is punishable by a fine of not more than $5,000, imprisonment for not more than four years, and community service for not more than 500 hours. Although this penalty is of limited utility in determining the ultimate dollar amount of the award, it does

suggest that a $200,000 award is unreasonable given the more limited financial penalty available in the criminal context.

When all three guideposts are considered together, they suggest that the $200,000 punitive damages award was improperly excessive. As a result, remittitur is required. The Court concludes that a $100,000 punitive damages award is in line with due process as it is still on the high end of past awards and is more in line with the level of reprehensibility displayed here.

Because the court has found that remittitur is necessary, Brock has the option of either accepting the remitted damages award or proceeding with a new trial on the issue of compensatory damages. *See Farber v. Massillon Bd. Of Educ.*, 917 F.2d 1391, 1396 (6th Cir. 1990) ("[A] forced remittitur without the offer of the option of a new trial on the issue of damages constitutes error.").

Brock must inform the court of his decision within 30 days of this order. Should Brock consent to the remittitur, it will not have the ability to appeal the remitted damages award. *See Donovan v. Penn. Shipping Co. Inc.*, 429 U.S. 648, 649 (1977). If remittitur is accepted, the Court would issue an amended judgment reflecting the remitted damages

award, starting the time from which Clary could file a notice of appeal.

Fed. R. Civ. P. 4.

## IV.   CONCLUSION

Accordingly, the Court **DENIES** Clary's motion for judgment as a matter of law and **CONDITIONALLY GRANTS IN PART** Clary's motion for a new trial or remittitur. (ECF No. 88.)

Specifically, **IT IS ORDERED** that Brock has the option of accepting a remittitur of the punitive damages award to $100,000 or proceeding to a new trial. Thus, Brock must either consent within 30 days to remittitur of the punitive damages award to $100,000, or the case must be retried within 30 days of this Order.

**SO ORDERED.**

**s/ Jonathan J.C. Grey**
Jonathan J.C. Grey
United States District Judge

Dated: September 5, 2025

### Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 5, 2025.

<u>**s/ S. Osorio**</u>
Sandra Osorio
Case Manager